Case number 14-1208, Lisa Ann Cornell and G. Ware Cornell Jr. Petitioners v. Federal Maritime Commission et al. Mr. Cornell for the petitioners, Mrs. Schofield for the respondents. May it please the court, Ware Cornell on behalf of the petitioners. I come from a district in which 10 million passengers come on cruise ships through two ports. The case which was brought against Princess Cruise Line before the Federal Maritime Commission involved an admitted refusal to deal, which violates 10b-10 of the Shipping Act. This has unreasonably refused to deal? Right. It involved an unreasonably refusal to deal. And what we have here... Did they admit that their refusal was unreasonable? Oh, no. But the ALJ found that their refusal had nothing to do with a transportation-related reason. Can I see if I fully understand your argument? Yes, sir. If I get your argument, it is that in the past, the commission has required a reason to be transportation-related. Correct. In this case, they used business judgment rather than transportation-related. They did so without an explanation for the change, and that's arbitrary. Not only that... Wait a minute. Is that your argument? That's not only part. I'll hear you on, but that's the only argument I can tease out of your brief. But if you have another one, let me know. No, that is our argument. And when you look at what a reasonable transportation-related basis is, we come to the definition of common carrier, which the FMC, in their order, admits that cruise lines are common carriers. So that's not an issue. Right. That's not an issue. The only issue is the one that you've told me is yours, right? Right. But Your Honor and Judge Tatel both sat on the CSIAviation panel, which defined and said what a common carrier is is a well-known creature of the common law. Does that have anything to do with this case? I think it does. And here's why I sent you. If the standard is a reasonable business judgment, it stands on the head of cases of the United States going back to 1867 and probably before. If you look at Justice Story's treatise, which we cite in our brief, which was in the 1850s, you find that basically they can't unreasonably refuse transport. Now, can they refuse transport to beekeepers who are bringing their bees on board? Can they refuse transport to people who are on terrorist watch lists? Of course, because those reasons are transportation-related. But their business is— Go ahead. Can I just pursue Judge Sentel's question for a minute here? Yes, Your Honor. Because I didn't hear an answer. You said that your major argument, your primary argument, is that the commission departed from its earlier cases saying these had to be transportation-based, right? It did. Okay. I saw that, and that's this New Orleans decision that the ALJ cited, right? I'm sorry, I didn't hear— The New Orleans decision? The New Orleans-Stevenson case, yes, Judge. I didn't see that argument raised until your reply brief. The primary argument we raised— Did you cite the New Orleans case? Not in the initial brief. Yeah, by the way, I had some trouble finding it because, at least in my copy of the brief, your table of authorities wasn't alphabetical. It was not cited in the— Yeah. It was not cited in— The commission didn't, and you argue that's the basis— Correct. —for reversal, and you argue that the statute—you have a couple of other arguments, but I didn't see this argument about departing from prior precedent until your reply brief. New Orleans-Stevenson was not— We don't consider arguments raised for the first time in reply briefs on this circuit. Well, the principal argument, if the Court please, is that the refusal to deal, which is set forth in the brief, was on the basis of matters that were not reasonably transportation— Do you have that in your original brief? I have—I do not cite— Where is your clearest statement of that in your blue brief? In my blue brief, I do not cite New Orleans-Devador. Then why isn't this proposition correct and fatal to your argument if it's raised for the first time in the gray brief? I think that because it is implicit in all of this that the problem is—it really doesn't matter— On page 21 of your blue brief, you say, in all cases of common carriage, those reasons must be related to transportation. That's your argument, correct? Yes, that's my argument. So there it is in your blue brief, right? You didn't cite the case, but the argument's there. The argument is there, Judge Miller. That's correct. It is there. The problem that we have here is that we have Congress, which says you can't unreasonably refuse to deal. They say this applies to all common carriers, including passenger carriers, passenger vessels. The Federal Maritime Commission says the implausibility under Twombly is that we don't think the Congress intended for us to decide passenger cases. To decide for you on that basis, we have to decide whether that two short paragraphs on page 21 that make reference to transportation-related is sufficient to raise this issue. You have no better place, no better argument that it's raised in the original brief than that. That is where it's raised in the original brief, Judge Suntell. And there's no authority cited, and it's not really stated as a causative proposition. No, Judge, it's not cited in that. So the argument you were just making, were you saying that the commission erred by saying that the statute 10 to 10 doesn't apply to passenger vessels? Is that what you were saying? No, the commission correctly decided that it applies to passenger vessels. What they decided was that they shouldn't have to consider cases that involve passengers. They say we don't think the Congress intended for us to decide passenger cases, and they cite a bunch of things like people who file lawsuits before our agency which deal with dining room reservations and itineraries. That's not what we're talking about. We have a very specific refusal to deal. They admit it. They trumpet it. And it absolutely violates 10b-2. Now, they've set up a new standard, reasonable business judgment, which is a dangerous standard. It is violative of your decision in the CSI case, plus cases in the United States going back hundreds of years, pretty close, that common carriers have to accept those willing to pay the fare. Willing to pay, but that doesn't answer the question about what is a reasonable basis for rejecting someone willing to pay. But it would have to be transportation-related. If they don't like me because I'm a Democrat. Well, then they couldn't. But suppose they – but, I mean, in this case they rejected the appellant because they viewed her as a vexatious litigator. Well, maybe and maybe not. Well, that's the reason. The ALJ rejected every one of their arguments. But the commission sits in the place of the ALJ. The commission can set aside an ALJ decision. The commission also said that because the Congress didn't intend for it to decide passenger claims. But they did decide that this claim – they did decide this claim. So that can't be the basis upon which you're appealing. But they said the Congress didn't intend it, and that's the implausibility under Twombly, and therefore we will not consider these other issues. And so by its – What other issues? The other issues are whether or not they were unjustly refusing to deal on a transportation-related basis. That's the issue. What are the other issues that you're talking about? Well, we had issues about whether or not we were able to recover certain items of damages. But the commission never reached those questions, so those aren't before us. Right. I put them in the brief, Judge, because in my circuit, if I – you know, I don't want to have considered to have waived those things. But you came mighty close to waiving the one issue you may have a chance of waiving on. I mean, we're now trying to decide that, and you brought in all this other stuff. I understand that New Orleans, Steve Adorn should have been in there, but on the other hand – The argument that they arbitrarily and capriciously departed from prior decisions. They certainly did. Now, we may be able to tease it out of those two paragraphs. But whether you cite that case or not, for us to consider that issue, you needed to have put it in your written brief. And while I'm on the circuit of your brief, and Judge Tate alluded to this, I've been here 26, 27 years. I've never seen a table of authorities that wasn't in alphabetical order before. I've never – I apologize to the judge, to the court. The court has a whole lot of cases you're talking about. You know, I've never seen one either, and I don't know how this one happened that way. And I apologize. Okay. Thank you. Thank you. May it please the Court. Paul Schofield for the respondents, the Federal Maritime Commission, and the United States of America. Your Honors, the main issue, the only issue before this case, is whether or not under 46 U.S. Code 41104, subsection 10, there was an unreasonable refusal to deal with negotiations. No, no, no, no, no, no, no. I think what the Commission decided was that they failed to state a claim under Twombly of unreasonable decision-making. Correct? Yes. So we have to decide the Commission that they didn't even colorably, plausibly allege a violation of 10b10. How can you defend that? Well – If that district court complaint came in with these same allegations, do you really think it would get kicked out on Twombly grounds? Well, we believe that it's clearly so reasonable, such a reasonable decision that was made by Princess Cruz. From the face of their, the Cornell's complaint. From the face of their pleadings, we believe that it was – From their complaint, the face of their complaint. Show me where on the face of the complaint you can tell that it was an indisputably reasonable determination not to sell them a ticket. Well – Not the litigation history. Your Honor, we contend that from the facts that were alleged in the complaint – Can you show me which ones? – it was not plausible. Tell me which ones. Do you have the complaint there with you? Yes, Your Honor. You have to show implausibility from the face of their document. Given – that's the judgment you have to defend. Under Chenery, we're stuck with how the commission decided that issue, right? Yes, Your Honor. Mm-hmm. Well, so Your Honor, starting with the factual allegations – Mm-hmm. – in their complaint, we believe that the facts as a whole do not state a plausible violation of the Chenery Act. On the complaint, where is that? Where do they allege that it was vexatious litigation? I mean, can you tell from this complaint whether there was any merit to their complaint, their litigation, from the face of this complaint? I think that's our test. The test the commission chose to adopt is that framework for decision-making. Yes, I understand, Your Honor. Our contention is that the facts that were alleged here clearly demonstrate that Princess Cruz Lines was not unreasonable in making their decision. Is it – no, no. The test is – because, again, the commission chose to go down the Twombly path here in the face of, what, a 60- to 70-page ALJ decision, which included factual determinations about the nature of the history of litigation and not accepting – under a much more rigorous standard, essentially a summary judgment standard, not accepting Princess Cruz Lines' view of the history of that litigation. We don't sit as fact-finders. The commission could have made facts, but instead chose to go off on this Twombly theory, which seems to me as indefensible as a matter of law. I don't know how you can have a 70-page district court decision make resolving disputed factual questions about the history of litigation between two parties in favor of the plaintiff and then have an appellate court say that their petition didn't even state a plausible claim when there's nothing on the face of the complaint. If they admitted on the face of their document that it had been frivolous or vexatious, it would be a different thing. But you can't tease that out from the face of this document. So what am I supposed to do with a commission decision like this? Well, Your Honor, I believe that the commission's decision looked at the case de novo and looked at it as a case of first impression and still looked at all the facts and considered everything before it. Well, then it would have been clear error for it to say, as its heading is, that they failed to plea a claim, citing Twombly. Yes, Your Honor. And then there's a separate question, which I think Judge Sentelle has already alluded to, and that is when the commission discussed making a grounded determination in non-transportation business decision-making being a legitimate, a reasonable basis for decisions, where did they explain why they were evolving the precedent to go from transportation reasons to business reasons and what the limitations on those business reasons would be? Well, I believe the commission cited the cases on point, Seekon Terminals v. Seattle Port Authority, Peckham v. Canaveral Port Authority, and New Orleans. Well, those two cases were cited. And New Orleans, Stevedore v. FFC, I believe that was also discussed. And I think all three of those cases lend support for the proposition that a reasonable business decision, that a discretionary business decision can be the basis for a reasonable business decision. But didn't each of those involve something that was transportation-related? Yes, they did, Your Honor. So really they're not authority for the proposition that you can exclude for a non-transportation-related, reasonable business reason? I believe they are, Your Honor. How can they be if they were dealing with transportation-related issues? Because, Your Honor, those cases did not state that a reasonable basis was limited to transportation-related or security and safety measures. They gave an example of a transportation-related issue that could be a reasonable basis. Safety and security could be a reasonable basis. But at the heart of each one of those cases, even the common law cases that the petitioner cites, at the end of the day, it's a business decision. Well, that doesn't answer the question. It's a business decision. Nobody disputes that they can do it on the basis of a business decision if it's transportation-related. Do you have any authority for the proposition that they can do it on the basis of a business-related decision? Period. That is one that's not transportation-related. I can't say that they couldn't reach that result. I believe the facts in those cases, Your Honor, show that the decision that was made by the commission for this court in Peckham were based on financial considerations that were, in fact, business-related. What were those financial considerations? In Peckham v. Canaveral Court Authority, Your Honor, there was a situation where there were two tugboat companies that were operating. And the decision was made that it was reasonable to go with one tugboat company compared to another tugboat company because that one was going to be able to provide the service better for the port. That sounds like it's transportation-related, doesn't it? It is transportation-related, but it's not limited to that. What was the other issue in that case that wasn't transportation-related? In Peckham? Yes. I believe there was a discrimination claim also, Your Honor. What was the discrimination case? They were choosing one carrier over another carrier in that case. Well, they had to be choosing one carrier over another to have a case. That had to have happened, right? Yes, Your Honor. So it really has nothing to do with the issue that we're talking about now, does it? Well, Your Honor, if I could address New Orleans, even New Orleans. Okay, go ahead. Even in that case, which there was also a discrimination claim in that case and there was an unreasonable decision to deal and negotiate in that case, but even in that case, one carrier was chosen over another because of the ability to have fixed price because of the assumption of fixed costs. Fixed price for transportation services, right? Yes, Your Honor. So it is transportation-related, right? It was, but, Your Honor, it was still based on whether or not this was a good business decision. Of course it was. Nobody is disputing that. Yes, Your Honor. The dispute comes over whether that business-related decision has to be also transportation-related or not. You keep going back to saying these cases said you could do it on a business judgment. Of course they did. That's the first line. The next line is, can they do it on a business judgment that's not transportation-related? Isn't your better argument that it's not adequately raised in the original? That is also our contention, Your Honor. But I'd also say there's nothing in the Shipping Act that states that it needs to be transportation-related. And with regards to regulating— What does the Shipping Act say that supports your position? Well, the statute that this is brought under, 46 U.S.C. 411-04, subsection 10, states a common carrier may not unreasonably refuse the deal and negotiate. How does that state the proposition, one way or the other, as to whether the reasonableness involved has to be with respect to a transportation-related issue? Well, Your Honor, it doesn't. It's ambiguous, and therefore I believe that the FMC should be afforded chaperone— If they give a reasoned explanation for moving beyond where precedent has been before. And I think you would—your brief agrees that not every business decision is going to be allowed. But there are limitations on that, right? Absolutely, Your Honor. It can't be race. Such as if it was discrimination or— Constitutionally protected status. Yes, Your Honor. Constitutionally protected activities. Exactly. Activities—isn't due process and seeking redress of grievance a constitutionally protected activity? Well— I thought it was. Yes, Your Honor. Okay. What if the lawsuit had actually been meritorious and very important in identifying, say, problems on a cruise line involving food poisoning or a drunk captain at the stern? So they had won their lawsuit. Would it still be an appropriate business decision to deny sales going forward? Well, I believe every case would have to be looked at individually based on the facts. And there would need to be a determination based on— Well, that's why it would be important to have a reasoned decision from the Commission saying when business— that's why non-transportation is very different from general business decisions that are unhinged from transportation considerations. And that's why it would be important to have a Commission decision that actually explains the contours of when business decisions are in. Did you see that explanation in the Commission decision here? Well, Your Honor, I believe that the—that was the intent of the Commission is to explain that. I don't think we can confirm an intent. I think the problem is we have a decision here. We have a complaint that does not on its face reveal whether their litigation was meritorious or non-meritorious. And so taking the facts in light most favorable to them, and it's the ALJ found them, actually, let's assume it was meritorious. And then can we say that it was—they failed to state a claim under Twombly for it being inappropriate under the Shipping Act to bar passage to people just because they exercised their constitutional right to enforce the law when those laws are for passenger safety? Well, Your Honor, getting back—addressing the passenger safety issue, the passenger safety is not an area that is actually regulated by the FMC. The FMC regulates commerce. Safety and security issues are generally regulated by— No, you're talking here—I'm talking about the litigation. You said it's fine to make a business decision. Yes, Your Honor. The Commission—not you. The Commission made a business—it's fine to make a business decision because someone sued you. They exercised their constitutional rights. And let's assume, taking facts in the light most favorable to the plaintiffs, as the Commission has chosen for its procedural approach here, that this were incredibly important, meritorious litigation. I just throw out that it actually would have promoted passenger safety in my hypothetical. Yes, Your Honor. I'm not asking you to regulate it. I'm asking you to say how I can tell from the Commission's decision that that type of business decision would be unreasonable. But this one is, looking only at the face of this complainant. Well, I believe that the Commission addressed the facts that were before it, and they— No, it did more than that. It went on to say there was a vexatious litigant, and, of course, princes could decide. It's not that the Commission couldn't have come to a reasoned decision in this case. The question is, have they done it? Consistent with how they set up the procedures and how they set up the statutory requirements. It's not whether you could have a reasoned explanation. Agencies have wide range. I just need to know where it is in here because I haven't been able to see it. Understood, Your Honor. Anything else? The best I can say is that I believe that the Commission's decision demonstrates that the facts that were presented did not state a plausible violation of the Shipping Act. Under Duomly, they decided that they had failed to state a claim upon which they would be granted. Thank you. Did you have something else you would say? Your Honor, I did want to point out that in Seacon Terminals v. Seattle Court Authority, in that case, which was an FMC decision, the inconsistent profitability of one MTO was the basis to choose another MTO who appeared more financially attractive long term. So, again, as Judge Santelli had pointed out, business decisions were at the heart of the decision, I believe, in all cases. But they were transportation-related decisions. I don't know why you keep trying to win an argument that you don't have. Nobody is arguing with this proposition that they can use business-related decisions. The argument is coming over whether those business-related decisions have to be transportation-related. But you keep coming back with this, look here, we have a case that says they can consider business decisions. Of course they can. Nobody disputed that. Thank you. Okay, thank you. Did Mr. Cordell have any time left? You can take two minutes, if you'd like. Let me just address a couple of quick things. Princess Quizline was never involved in the original litigation, which was brought under Paducah, the Deceptive and Unfair Trade Practices Act. The way Princess got involved was that their general counsel also represented Global Fine Arts. The cruise was on a carnival vessel, not on a princess vessel. And there was a settlement which called basically for this never to happen. And that settlement was negotiated by the princess general counsel's office. And it was done with their fingers behind their back because they later claimed that it had been done in the past. The Twombly analysis is here. We have a 74-page ALJ decision. Twombly was designed to eliminate the problems that Conley v. Gibson bedeviled the Article III courts for forever, since it was decided that anything could be a lawsuit because it could always be amended. And Twombly established this thing of plausibility. And clearly, when you say we're dismissing on Twombly grounds, you cannot go on to rule on the merits. And that's exactly what... Well, you can if you're saying alternative. We have lots of cases where we've upheld not only district courts but also various administrative bodies where they have alternative basis. And they may be wrong on basis A but right on basis B. Right, but they didn't do that here. They said because we're dismissing on Twombly, none of these things count. And in their decision, which I understood if they had a full plenary review, the standard is de novo. I do understand that. But the problem is they said we never decided this. And so going back to your earlier argument, and I think it was Judge Tatel said, you know, what we normally do in these cases is send it back to the district court. He was talking about the issue where there's an allegation of incompetence. I understand. This case was not properly decided under Twombly, and it needs to go back. Okay. Okay, thank you. Case is submitted.
judges: Tatel, Millett, Sentelle